UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN HILL HAWTHORNE,

                Petitioner,

v.                                      Case No: 6:16-cv-1586-Orl-40TBS

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

                Respondents.

_____/

**OPINION AND ORDER**

THIS CAUSE is before the Court on a Petition for Writ of Habeas Corpus filed, through counsel, by John Hill Hawthorne ("Hawthorne" or "Petitioner") under 28 U.S.C. § 2254. (Doc. 1, filed September 12, 2016). In compliance with this Court's Order (Doc. 4), Respondents filed a Response to the Petition. (Doc. 7). Hawthorne filed a Reply to the Response (Doc. 11), and it is ripe for review. For the reasons set forth below, each of Hawthorne's claims will be denied.

## I.      Background and Procedural History

On August 5, 2009, the State of Florida charged Hawthorne by information with the second-degree murder of Joel David Boner ("Boner"), in violation of Florida Statute §§ 782.04(2) and 775.087(1). (Doc. 8-5 at 27). Thereafter, Hawthorne filed a motion for immunity pursuant to Florida Statute § 775.032, commonly known as the "Stand Your Ground Law," in which he urged that he had acted in self-defense when he stabbed Boner. (Doc. 8-5 at 106).

The trial court held an evidentiary hearing on the Stand Your Ground motion, and Hawthorne, Cameron Milner, and Dr. William Anderson testified. (Doc. 8-6 at 4). Both Hawthorne and Milner testified that they were riding an ATV at around 6:00 a.m. on July 9, 2009 when they decided to go see where Boner was camping. (Doc. 8-5 at 106-107). When they arrived at Boner's campsite, Hawthorne cut a hole in his tent and ordered Boner to leave the property, which belonged to Hawthorne's cousin. (*Id.*). Hawthorne also cut down Boner's clothes line. (*Id.*). Hawthorne's and Milner's testimony differed as to what happened next. Hawthorne testified that Boner "came" at him, whereas Milner said that Hawthorne followed Boner, calling him "fag" and "gay" as he (Boner) walked away. Thereafter, Hawthorne and Boner became involved in a physical altercation during which Boner was stabbed. (*Id.* at 108-109). Hawthorne refused to take Boner to the hospital, even though he begged him to do so. (*Id.*).

The trial court denied the Stand Your Ground motion, noting:

> The evidence in this case establishes that the defendant was the aggressor in this case. There is no evidence to suggest that the defendant had a reasonable belief that his use of deadly force was necessary to defend himself since he was the only one who first banished [sic] a deadly weapon and according to a witness attacked the victim in this case.

(*Id.* at 111). Thereafter, Hawthorne proceeded to trial, and argued that he stabbed Boner in self-defense. A jury found Hawthorne guilty as charged. (*Id.* at 76). The trial court sentenced him to thirty-eight years in prison, and five years of probation. (*Id.* at 114). Florida's Fifth District Court of Appeal ("Fifth DCA") *per curiam* affirmed Hawthorne's conviction and sentence. (Doc. 8-7 at 2).

On December 12, 2012, Hawthorne filed a counseled motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion"), raising seven claims of ineffective assistance of counsel. (Doc. 8-7 at 79). On January 2, 2014, Hawthorne filed a supplement to the Rule 3.850 motion, raising an eighth claim of ineffective assistance. (*Id.* at 100). He filed a second supplement, raising a ninth ineffective assistance claim on April 21, 2014. (*Id.* at 105). On January 8, 2015, the post-conviction court struck the supplements because they were untimely. (*Id.* at 151). Thereafter, Hawthorne's post-conviction counsel filed an amended supplement arguing that the post-conviction court should consider the new claims because he ("post-conviction counsel") had negligently failed to timely file them, even though Hawthorne had asked him to do so. (*Id.* at 155). On September 15, 2015, the post-conviction court summarily denied relief on six of Hawthorne's Rule 3.850 claims, found one claim to be untimely, and ordered an evidentiary hearing on the remaining claims. (*Id.* at 164).

The post-conviction court conducted an evidentiary hearing on September 15, 2015. Thereafter, the post-conviction court entered a written order denying the remaining claims, and finding no cumulative error. (Doc. 8-8 at 18). Florida's Fifth DCA *per curiam* affirmed the denial of Hawthorne's Rule 3.850 Motion without a written opinion. (Doc. 8-9 at 251).

## I.       Legal Standards

### A.       The Antiterrorism Effective Death Penalty Act (AEDPA)

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court]

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).

Notably, even when the opinion of a lower state post-conviction court contains flawed reasoning, the federal court must give the <u>last</u> state court to adjudicate the prisoner's claim on the merits "the benefit of the doubt." *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016), *cert granted Wilson v. Sellers*, No. 16-6855, 137S. Ct. 1203 (2017). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Therefore, to determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state post-conviction court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal court is not limited to assessing the reasoning of the lower court. *Wilson*, 834 F.3d at 1239.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely

because the federal habeas court would have reached a different conclusion in the first instance.").

## B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  *Id.*  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.  *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, the petitioner must "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]"  *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## C. Exhaustion

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering unexhausted claims that would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994). Therefore, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.

A petitioner can avoid the application of procedural default by establishing: (1) objective cause for failing to properly raise the claim in state court; and (2) actual

prejudice from the alleged constitutional violation. *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179–80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *Murray v. Carrier*, 477 F.3d 478 (1986). To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. *Crawford v. Head*, 311 F.3d 1288, 1327–28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray*, 477 U.S. at 479-80. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.    Analysis

Hawthorne raises six claims of ineffective assistance of counsel in his 28 U.S.C. § 2254 petition. He asserts that defense counsel Charles Willits ("Counsel") was ineffective for failing to: (1) properly impeach witness Cameron Milner; (2) file a motion in limine to preclude the introduction of Hawthorne's prior use of a knife to threaten someone and then accidentally opening the door to the evidence; (3) file a motion in limine to preclude

the state from introducing evidence showing that Hawthorne was unemployed and not attending school when he stabbed Boner; (4) object to statements made by the prosecutor during closing argument; (5) file a motion to suppress Hawthorne's statement to the police due to an insufficient *Miranda* warning; and (6) file a motion to suppress his statement to the police on the ground that law enforcement refused to allow his attorney to contact him during the interrogation. (Doc. 1 at 19-37).

The first five claims were raised in Hawthorne's Rule 3.850 motions and denied by the post-conviction court. (Doc. 8-7 at 164; Doc. 8-8 at 18). The denials were affirmed by Florida's Fifth DCA without a written opinion. (Doc. 8-9 at 251). Accordingly, these grounds are exhausted. The silent affirmance of the post-conviction court is entitled to deference, and this Court must determine whether any arguments or theories could have supported the appellate court's decisions. *Wilson*, 834 F.3d at 1235. Hawthorne did not exhaust his last ground, *see* discussion *infra* Part III(E). Each ground will be addressed below.

### A.     Claim One

Hawthorne asserts that Counsel was ineffective for failing to "properly and vigorously impeach the state's key witness, Cameron Milner, by playing back prior inconsistent statements he'd made during the course of a recorded interrogation at the Ocoee Police Department." (Doc. 1 at 17). Specifically, Hawthorne notes that in a July 22, 2009 taped statement to the police, Milner said that Boner attacked Hawthorne in response to being ordered to leave the property where he (Boner) was camping and that he (Milner) never saw a knife at any point. (*Id.* at 21). Hawthorne urges that Counsel

did not properly ask the predicate questions necessary to play a DVD of Milner's police interview to impeach Milner's trial testimony. (*Id.* at 20-22). As a result, argues Hawthorne, "[Counsel] effectively failed to cross examine the only eyewitness with his several significant inconsistent statements." (*Id.* at 22).

Hawthorne raised this claim in his Rule 3.850 Motion, and the post-conviction court concluded that Hawthorne could not demonstrate *Strickland* prejudice from Counsel's alleged failure to ensure that the video was played. The post-conviction court explained:

> The jury was aware that Mr. Milner's statement to the police changed based upon his testimony on direct and cross-examination. Mr. Milner testified that he initially lied to the police, but he told the truth after he talked to his parents. He also testified that at first he told police that he did not see a knife, but later realized he needed to tell the truth and said that he saw the Defendant stab the tent and cut a clothesline. Although Mr. Milner saw punches being thrown while the men were on the ground, he did not see a knife in the Defendant's hand during the fight. Mr. Milner also testified that he saw the Defendant strike the victim's chest a few times, but it was not a big altercation and he separated them. He and the Defendant discussed giving the Defendant an alibi by saying that the victim attacked the Defendant and that the Defendant had to defend himself. Mr. Milner testified that he was given immunity from prosecution as long as he told the truth. Based upon the foregoing, the jury was aware of Mr. Milner's potential credibility issues and bias, and the Defendant has not demonstrated prejudice.

(Doc. 8-7 at 166) (citations to the trial transcript omitted). Florida's Fifth DCA affirmed the lower court without a written opinion. (Doc. 8-9 at 251).

Hawthorne now argues that the post-conviction court erred by failing to grant an evidentiary hearing on this claim and order a new trial. (Doc. 11 at 2). Federal habeas

relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004). Accordingly, any argument based upon the post-conviction court's failure to order an evidentiary hearing on Claim One is not cognizable on federal habeas review.

Hawthorne also urges that "[t]he failure of trial counsel to bring important portions of Milner's previous videotape recorded statement into evidence left the jury with the impression that Milner's statement was consistent from the time of the event through trial." (*Id.*). This statement is completely refuted by the record. Milner testified at trial that when he and Hawthorne saw the police arrive at Hawthorne's home, they decided to "think of a story . . . really fast." (T. at 454, 494). They decided to tell the police that Hawthorne was attacked by Boner. (*Id.*). He testified that he did not initially tell the police the whole truth of what had happened because he "just thought the alibi story, if we stick through it, you know, it might work." (*Id.* at 458, 497). However, Milner decided to tell the truth after his parents arrived at the police station, and they urged him to do so. (*Id.* at 458-49, 483-84). Milner admitted on cross examination that he initially told the police that he did not see a knife, but after he realized he needed to tell the truth, he changed his story. (*Id.* at 482). During cross examination, Counsel impeached Milner numerous times with his first statements to the police, and Milner said that "the story changes because, like we stated, there is an alibi, so then it changed to that." (*Id.* at 520). Milner explained:

> I would like to make this clear that we stated there is the alibi part of the story and then there's the truth part of the story.

11

> And the alibi story, the story was is that Joel came at John. So I was saying that Joel is going to be coming at John in all my alibi story, so, yes, I might have said that, but can we please state that that was the alibi part of it?
>
> . . .
>
> You know, we're going down. He's my buddy. You know, we thought we could lie about it, obviously.

(*Id.* at 523). During closing argument, Counsel noted that Milner's "statement has changed in every single way from day one" and urged that nothing Milner said could be believed:

> You heard during the cross-examination of him, all the statements he made, how they changed. And even Mr. Lewis said when he came in and talked to me on August 12, 2009, well, maybe he didn't tell a full truth. Even Mr. Lewis concedes that. And then he sits here and he tells you, as jurors, that you are supposed to believe somebody who admitted he flat out lied to the police. He lied to them when his parents came in there afterwards, before his parents were in the room on the 22nd of July. He lied to Mr. Lewis. Finally, five months later, after being represented by a lawyer – we'll get to what he said - then he throws in an alibi. It isn't there anywhere in that statement any time prior to that. How in the world am I going to cross-examine a person effectively other than to say he's a known liar? I don't like calling him that, but the fact of the matter is, we're talking about a murder trial and we're talking about serious things here.

(*Id.* at 1223-24). Given that Counsel impeached Milner with his prior statements and given that the jury was aware of the Milner's potential credibility issues and biases, the state courts reasonably concluded that Hawthorne cannot demonstrate *Strickland* prejudice. Accordingly, Claim One is denied. 28 U.S.C. § 2254(d).

## B.     Claim Two

Hawthorne asserts that Counsel was ineffective for failing to file a motion in limine to exclude evidence that, a year before he stabbed Boner, Hawthorne had threatened

someone else with a knife during a verbal altercation. (Doc. 1 at 23-25). He further asserts that Counsel was ineffective for accidentally eliciting testimony about the prior knife threat. (*Id.* at 24). At issue is the following exchange during Counsel's cross examination of Milner:

> Q.    You've known John for a long time. Did he carry a pocketknife most of his life?
>
> A.    For the time that I knew him, yes, he did.
>
> Q.    Has he ever, to your knowledge, except allegedly this time?
>
> A.    He has never attacked anyone with a knife, no.
>
> Q.    Never threatened anyone either, did he?
>
> A.    Yes, he did.

(T. at 488). Later during the cross examination, Milner testified that although Hawthorne had, in the past, threatened someone with a knife "he didn't cut them with the knife or hurt them with the knife." (*Id.* at 519).

Hawthorne now urges that by opening the door to the prior act, Counsel allowed the state to elicit further damaging testimony by asking Milner to explain his statement. (Doc. 1 at 24). Indeed, on re-direct, Milner explained that, during a verbal altercation at a party the year before, Hawthorne had pulled out a knife and "kind of showed it as, you know, just to bring it out, just, you know, as – I guess, just to show it." (*Id.* at 535). Milner testified that Hawthorne acted "kind of like in a threatening, don't – you know, if you come at me, I have a knife pretty much." (*Id.* at 536).

These claims were raised in Hawthorne's Rule 3.850 Motion, and the post-conviction court conducted an evidentiary hearing at which Counsel admitted that he

had forgotten about the prior attack when he questioned Milner. (Doc. 8-9 at 118-19). In the order denying relief, the post-conviction court determined that Hawthorne had shown neither deficient performance nor prejudice. (Doc. 8-8 at 20). The court noted that "[t]he suggested defense motion in limine, if granted by the Court, would have only precluded the State from introducing the evidence, not the defense." (*Id.*). Because it was Counsel, not the State, who introduced the evidence, Hawthorne could not demonstrate prejudice from Counsel's failure to file a motion in limine. (*Id.*). The post-conviction court further noted that, because Hawthorne urged that he acted in self-defense, the evidence of the prior knife incident was admissible and "could also have been introduced by the State to rebut the Defendant's claim of self-defense and to counter his claim that he was not the aggressor." (*Id.* at 21-22) (citing *Wuornos v. State*, 644 So. 2d 1000 (Fla. 1994)).[1] Finally, recognizing that the *Strickland* performance standard is an objective one, the post-conviction court determined that some reasonable competent counsel could have decided to preemptively introduce the evidence of the prior knife incident:

> Although [Counsel] now claims that it was a mistake to introduce that evidence during cross examination of Mr. Milner, the Court finds that a fully informed and reasonable competent counsel could have proceeded as trial counsel did in this case. When faced with admissible collateral act evidence, it is not uncommon for trial counsel to bring up the

[1] To the extent Hawthorne now urges that he is entitled to habeas relief because the prior acts evidence would not have been admissible by the state, the post-conviction court—and by its silent affirmance, the appellate court—have already rejected this argument. State courts, not federal courts on habeas review, are the final arbiters of state law. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) ("state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus.").

> evidence before the State can do so to take the sting out of
> evidence. Doing so gives the defense an opportunity to
> distinguish or mitigate the effectiveness of the evidence the
> State seeks to introduce. [Counsel] testified at the hearing that
> he did just that – tried to mitigate the testimony by asking
> follow-up questions to establish that the Defendant had never
> hurt anyone with a knife before. Accordingly, *Strickland*'s
> deficient performance prong has not been satisfied because
> the Defendant has not established that *no* competent counsel
> would have taken the action that his counsel did take.

(Doc. 8-8 at 26). Florida's Fifth DCA affirmed without a written opinion. (Doc. 8-9 at

251).

Hawthorne urges that the "State court's creation of a reason for trial counsel to

introduce the inadmissible evidence resulted in a decision that was based on an

unreasonable determination of the facts, in light of the evidence presented in the State

court proceeding." (Doc. 11 at 4). However, the state court did not misapply clearly

established federal law when it posited a reason for the introduction of the evidence;

under *Strickland*, Hawthorne "must show that counsel's representation fell below an

objective standard of reasonableness." 466 U.S. at 688 (emphasis added). In other words,

Counsel's *actual* motivation for the evidence's admission was irrelevant. *See Castillo v.

Sec'y, Fla. Dep't of Corr.*, 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question

under *Strickland*'s performance prong, which calls for an objective inquiry, is whether any

reasonable lawyer could have elected not to object for strategic or tactical reasons, even

if the actual defense counsel was not subjectively motivated by those reasons."). The state

court's conclusion that reasonable competent counsel could have preemptively

introduced the prior knife incident in order to ameliorate the sting of the evidence was

not "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702. *See, e.g., Woodward v. Epps*, 580 F.3d 318 (5th Cir. 2009) (trial counsel not ineffective for introducing evidence of prior bad acts because the state court had determined that the bad act evidence in question could have been admitted by the prosecution). The state courts' rejection of Claim Two was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. The claim is denied. 28 U.S.C. § 2254(d).

### C.    Claim Three

Hawthorne asserts that Counsel was ineffective for failing to file a motion in limine to exclude evidence that he was neither working nor going to school during the three months before he killed Boner. (Doc. 2 at 29). Hawthorne argues that Counsel was aware he was nineteen years old, and neither employed nor in school in July of 2009 and that the prosecutor characterized him as a deadbeat during opening statements and direct examination which weakened his credibility and his claim of self-defense. (*Id.*). He asserts that, after the state elicited evidence that Hawthorne was unemployed during the three months before the crime, Counsel should have moved for a mistrial. (*Id.*).

Hawthorne raised this claim in his Rule 3.850 motion, and the post-conviction court determined that the prosecutor's comments were not so "prejudicial as to vitiate the entire trial." ( Doc. 8-7 at 169) (citing *Card v. State*, 803 So. 2d 613, 622 (Fla. 2001)). The post-conviction court also noted that Counsel objected to the relevancy of the prosecutor's questions to Milner as to whether Hawthorne was working or going to school. (*Id.*). The court concluded that Hawthorne had demonstrated neither deficient

performance nor prejudice, and denied the claim. (*Id.*). Florida's Fifth District Court of Appeal affirmed. (Doc. 8-9 at 251).

The testimony at issue was elicited from Milner, who said that Hawthorne was neither working nor going to school between April and July of 2009. (T. at 408-09). Although Counsel's objections to the prosecutor's questions on this issue were sustained, the prosecutor re-worded his questions and the jury learned of Hawthorne's educational and employment status during these three months. (*Id.*). Contrary to Hawthorne's current assertion, the jury did not hear that Hawthorne was a "deadbeat." (Doc. 1 at 29). Given that Counsel was able to object to the prosecutor's questions regarding Hawthorne's educational and employment status, and given that it is not unusual for a teenager to be unemployed during the summer, reasonable competent counsel could have decided against filing a motion in limine on this issue. *See* T. at 408-09 (trial court sustains Counsel's objections regarding whether Hawthorne had finished high school, but allows a question about Hawthorne's work status). Moreover, even if Counsel's performance was deficient, Hawthorne cannot demonstrate *Strickland* prejudice. Upon review of the entire record, including the transcript of Hawthorne's trial, this Court concludes that the admission of evidence showing that Hawthorne neither worked or attended school between April and July of 2009 was not "sufficient to undermine confidence in the outcome" of Hawthorne's trial. *Strickland*, 466 U.S. at 694.

In addition, a mistrial would not have been granted, even had Counsel moved for one. Under Florida law, "[a] mistrial is appropriate only where the error is so prejudicial as to vitiate the entire trial." *Hamilton v. State*, 703 So. 2d 1038, 1041 (Fla. 1997). When an

error does no substantial harm and fails to materially prejudice the defendant, the trial court properly denies a motion for mistrial. *Johnsen v. State*, 332 So. 2d 69, 71 (Fla. 1976). The post-conviction court specifically determined that a mistrial would not have been granted because any error occurring at Hawthorne's trial were not so prejudicial as to vitiate the entire trial. (Doc. 8-7 at 169). As noted, the state court is the final arbiter of state law. *Agan*, 119 F.3d at 1549. Claim Three fails to satisfy either *Strickland* prong, and the claim is denied under 28 U.S.C. § 2254(d).

### D.    Claim Four

Hawthorne asserts that Counsel was ineffective for failing to object to the prosecutor's improper statements of personal opinion during closing argument. (Doc. 1 at 31). Specifically, Hawthorne asserts:

> Twice in closing argument, the prosecutor made statements that were clearly objectionable because they were statements of his personal opinion. In the first instance, he stated "I would pray that those means would be available to me" in the course of describing how Mr. Hawthorne and Milner allegedly rejected Mr. Boner's post-fight request to get a ride for medical help. In the second instance, he stated "I don't believe Dr. Anderson" while in the course of urging the jury to reject the testimony of this key defense expert pathologist.

(*Id.*). Hawthorne raised this claim in his Rule 3.850, and it was rejected by the post-conviction court because Hawthorne could not demonstrate *Strickland* prejudice. (Doc. 8-7 at 170). Florida's Fifth DCA affirmed without a written opinion. (Doc. 8-9 at 251).

In *Ruiz v. State,* the Florida Supreme Court noted that "the role of counsel in closing argument is to assist the jury in analyzing [the] evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence[.]" 743 So. 2d 1, 4 (Fla. 1999).

The *Ruiz* court explained that "[t]he assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should draw from the evidence." *Id.* (citing *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978)). The Florida Supreme Court has further explained that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." *Robinson v. State*, 610 So.2d 1288, 1290 (Fla. 1992) (quoting *Bertolotti v. State*, 476 So.2d 130, 134 (Fla. 1985)). A review of the record supports a conclusion that the state attorney acted within the confines of *Ruiz* and *Robinson*.

The first statement was made when the prosecutor pointed out that Hawthorne had not taken the injured Boner to the doctor or called 911 even when he (Boner) begged him to do so. (T. at 1192-93). When viewed in context, the prosecutor was not expressing his personal opinion, but using obvious sarcasm to suggest that Hawthorne's failure to seek help for Boner—even though he had the means to do so—supported a conclusion that the stabbing was not an accident. (*Id.*). Because reasonable competent counsel could have determined that the prosecutor was merely stating his contention as to the conclusion the jury should draw from the evidence, Counsel's performance was not deficient for failing to object.

The second statement makes little sense. The prosecutor was not talking about Dr. Anderson or the temperature of Orlando in the summer when he stated:

> You've heard this big deal of Dr. Hansen said it would take two and a half minutes [for the victim to die after being stabbed]. Mr. Willits asked Dr. G a question, Dr. Hansen said two and a half minutes. Well, lo and behold, when Dr. Hansen goes back to look at her notes, and this is why what attorneys say is not evidence, you find out that she said

> several minutes. But think about the significance of what that has to do with any of the elements in this case.
>
> The potential life of Joel Boner from receiving those stab wounds, several minutes, died shortly – depends on the person, depends on the physical condition. Dr. Wecht even said there is a lot of variables. He conceded that, and he conceded other things. I don't believe Dr. Anderson – and again, you can weigh his credibility and can see it's hot in Orlando in the summertime.

(T. at 1203-04). It is impossible to determine from the transcript whether Counsel was actually expressing a personal opinion of Dr. Anderson's veracity. Nevertheless, a prosecutor is allowed to argue the credibility of witnesses or any other relevant issue so long as the argument is based on the evidence; and this is precisely what the prosecutor did. *Miller v. State*, 926 So. 2d 1243, 1254 (Fla. 2006); *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987) ("When counsel refers to a witness or a defendant as being a 'liar,' and it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence. It was for the jury to decide what evidence and testimony was worthy of belief and the prosecutor was merely submitting his view of the evidence to them for consideration."). Reasonable competent counsel could have decided against objecting to the prosecutor's confusing statement either because it was nonsense or because the prosecutor was arguing the credibility of a witness based upon the evidence.

Finally, the Court has reviewed the prosecutor's entire closing argument and concludes that the post-conviction court reasonably determined that Hawthorne cannot satisfy *Strickland*'s prejudice prong because nothing the prosecutor argued was so

prejudicial "as to vitiate the entire trial." There is not a reasonable probability of a different verdict had Counsel objected to the prosecutor's comments. (Doc. 8-7 at 171). Claim Four is denied.

### E. Claims Five and Six

In Claim Five, Hawthorne argues that Counsel was ineffective for failing to seek suppression of his statement to the police on the ground that his *Miranda* warning was inadequate. (Doc. 1 at 32-33). Specifically, Hawthorne contends that the warning did not convey that he had the right to have an attorney present during his interrogation. (*Id.*). In Claim Six, Hawthorne urges that Counsel was ineffective because he did not seek suppression of his statement to the police on the ground that the police did not allow Counsel to speak with him during the interrogation. (*Id.* at 35-37).

Hawthorne raised Claim Five in an untimely supplement to his Rule 3.850 motion. Nevertheless, the post-conviction court addressed the claim on the merits and determined that Hawthorne could not demonstrate *Strickland* prejudice because there was no reasonable probability that a motion to suppress would have been granted. (Doc. 8-7 at 171-72). Hawthorne also raised Claim Six in an untimely supplement, but the post-conviction court declined to consider the claim because it was untimely. (*Id.* at 172). Florida's Fifth District Court of Appeal affirmed the post-conviction court without a written opinion. (Doc. 8-9 at 251).

In his reply, Hawthorne urges that his failure to exhaust Claim Six is excused by the Supreme Court's holding in *Martinez v. Ryan*. (Doc. 15 at 3). In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. Under *Martinez*, a petitioner still must establish that his underlying ineffective assistance claim is "substantial" -- that is, that it has "some merit" before the procedural default can be excused. *Martinez*, 132 S. Ct. at 1318-19.

Neither of these grounds sets forth an ineffective assistance claim under *Strickland* because a review of the record demonstrates that Counsel strategically chose to use Hawthorne's statement to the police in its self-defense case. Reasonable strategic decisions are "virtually unchallengeable" on habeas review. *Strickland*, 466 U.S at 690. Because there were only three witnesses to the incident—Hawthorne, Boner, and Milner, who testified for the State—Hawthorne had to either testify at trial or admit his statement to the police into evidence in order to present his self-defense theory. *See Sipple v. State*, 972 So. 2d 912 (Fla. 5th DCA 2007) ("When self-defense is asserted in a criminal case, the defendant only has the burden of presenting some evidence to establish a prima facie case that the killing was justified."). Without Hawthorne's statement to the police, the jury would have heard only Milner's version of the events and Hawthorne's trial testimony; they would not have learned that Hawthorne claimed self-defense and claimed that Boner was the initial aggressor all along—even before he knew that Boner was dead. (T. at 749-50, 752-54, 757, 767, 788-91). Indeed, Counsel—not the state— admitted Hawthorne's police statement into evidence at the stand-your-ground hearing, and Counsel asked Hawthorne during that hearing whether he had freely and voluntarily

made the statement to the police. Hawthorne admitted that he had done so. (Doc. 8-5 at 107; Doc. 8-6 at 150).[2]  Counsel told the Court at the hearing that he wanted to show Hawthorne's demeanor during his interview with the police. (Doc. 8-6 at 152). Counsel had Hawthorne review portions of his statement to the police and pointed out that the statement did not differ from his testimony at the hearing. (*Id.* at 209).

During closing argument at trial, Counsel pointed out that Milner's statement to the police changed substantially over time while Hawthorne's had remained fairly consistent. (*Id.* at 1220-30). Counsel also pointed out that the police had tried to confuse Hawthorne during the interview, and were not straightforward with him. (*Id.*at 1229).[3] He told the jury that they could look at or listen to Hawthorne's statement again to see how the police would "cut [Hawthorne] off" when he tried to answer their questions. (*Id.*).

Finally, because there is no reason to conclude that the statements Hawthorne made to the police were coerced or otherwise involuntary, even had the statements been suppressed, Hawthorne could not have altered his testimony at trial to present a stronger self-defense argument; any contrary testimony from Hawthorne would have been used to impeach him on cross-examination and would have damaged his credibility. As noted by the United States Supreme Court, to conclude otherwise "would pervert the

---

[2] Petitioner also testified at trial that he talked to the police freely and told them what took place. (T. at 1068-89).

[3] At trial, Counsel questioned Hawthorne about his statements to the police, and Hawthorne told him that he would have been more hesitant to speak with them and would have asked for a lawyer if the police had told him that Boner died. (T. at 1074).

constitutional right [of proper *Miranda* warnings] into a right to falsify free from the embarrassment of impeachment evidence from the defendant's own mouth." *Oregon v. Hass*, 420 U.S. 714 (1975); *see also Nowlin v. State*, 346 So.2d 1020 (Fla. 1977) (a defendant's voluntary statement made in technical violation of *Miranda* may be used to impeach him). Under the circumstances, Counsel's decision not to seek suppression of Hawthorne's police statement was reasonable, and Hawthorne cannot satisfy *Strickland*'s deficiency prong.

The post-conviction court's rejection of Claim Five was reasonable, and the Claim is denied. 28 U.S.C. § 2254(d). Moreover, because Claim Six is not "substantial," *Martinez* does not excuse Hawthorne's failure to properly raise it in state court. *Martinez*, 132 S. Ct. at 1318-20. Claim Six is dismissed as unexhausted.

Any of Hawthorne's allegations not specifically addressed herein have been found to be without merit. Because the petition is resolved on the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## IV.    Certificate of Appealability

Hawthorne is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard*

*v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Hawthorne is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

ACCORDINGLY, it is hereby **ORDERED:**

1.     The Petition for Writ of Habeas Corpus filed by John Hill Hawthorn (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

3.     Hawthorne is **DENIED** a certificate of appealability.

4.     The **Clerk of Court** is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Orlando, Florida on April 12, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties
SA: OrlP-4